UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOHANNA FRANCIS,

Appellant,

- against -

NORTHGATE REAL ESTATE GROUP,

Appellee.[1]
-------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-7110 (PKC)

PAMELA K. CHEN, United States District Judge:

Appellant Johanna Francis ("Francis"), proceeding *pro se*, filed this appeal on December 29, 2025, arising from a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York (Hershey Lord, *Bankr. J.*) ("Bankruptcy Court") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (Notice of Appeal, Dkt. 1.) On July 31, 2024, Etienne Estates at Washington LLC ("Debtor"), of which Francis is the sole and managing member, filed a Chapter 11 bankruptcy petition. (B.R. 19–23.)[2] On March 5, 2025, the Bankruptcy Court authorized Debtor to retain Appellee Northgate Real Estate Group ("Northgate") as a real estate advisor to Debtor's property at 301 Washington Avenue, Brooklyn, New York. (B.R. 925–27.)

---

[1] The Court notes that the docket in this matter identifies Etienne Estates at Washington LLC as an Appellee. However, the parties' briefing only refers to Etienne Estates at Washington LLC as part of the caption to identify the Bankruptcy Court matter from which this appeal is taken, but Etienne Estates at Washington LLC itself is not named as an appellee; only Northgate Real Estate Group is. The Clerk of Court is therefore respectfully requested to remove Etienne Estates at Washington LLC from the docket.

[2] Throughout this Memorandum and Order, "B.R." refers to the Notice of Bankruptcy Record Received, filed at Dkt. 3. The page numbers for these citations refer to those found in the bottom right corner of each page of the B.R.

Francis appeals from the Bankruptcy Court's order, dated December 22, 2025, awarding $10,000 in professional fees to Northgate (the "Fee Order"). (B.R. 2524–25 (order); *see also* B.R. 2579–93 (oral ruling).) Francis also filed a motion to stay the Fee Order pending this appeal. (Mot. Stay Pending Appeal, Dkt. 8.) For the reasons set forth below, the Court dismisses the appeal and denies Francis' motion to stay as moot.

## BACKGROUND

### I. The Underlying Bankruptcy

On July 31, 2024, Debtor filed a Chapter 11 bankruptcy petition. (B.R. 19–23.) Debtor is a limited liability company, and Francis is its sole and managing member. (B.R. 25.) Debtor's principal asset is a three-story residential property located at 301 Washington Avenue, Brooklyn, New York (the "Property"). (*See* B.R. 25, 35–37.) Francis has resided at the Property for most of her life. (B.R. 25.) Debtor filed for bankruptcy to stay a foreclosure sale and refinance the Property. (*Id.*) At the time of the bankruptcy filing, the Property was subject to a state court judgment of foreclosure in the amount of $2,448,898.26. (B.R. 832.)

Months after filing for bankruptcy, on February 11, 2025, Debtor filed an amended Chapter 11 plan of reorganization with the Bankruptcy Court. (B.R. 832–46.) The plan contemplated two reorganization options: The first option was for Debtor to complete a cure-and-reinstatement or a refinancing of the mortgage debt secured by the Property by April 2, 2025. (*See* B.R. 832–33.) If Debtor was unable to meet the requirements of the first option by the April 2 deadline, the plan would toggle to the second option, and an auction sale of the Property would be held on April 3, 2025. (B.R. 833.) The deadlines were subsequently extended to April 29 and April 30, 2025, respectively. (B.R. 1368–69.)

On February 26, 2025, Debtor filed an application (the "Retention Application") with the Bankruptcy Court to retain Northgate as its real estate advisor pursuant to a written agreement

between the parties (the "Retention Agreement"). (B.R. 882–87.) The Retention Application stated that "Northgate ha[d] been retained as a real estate professional in numerous other bankruptcy cases," and that Northgate would "use its commercially reasonable efforts to . . . arrange refinancing for, market and sell, or otherwise dispose of the Propert[y] on such terms as are acceptable to the Debtor." (B.R. 883–84.) With respect to compensation, the Retention Agreement and the Retention Application contemplated that Northgate would earn a commission on the sale or refinancing of the Property, to wit:

> (i) a three (3%) percent commission, if the Property is sold at auction, (ii) a 3% refinancing fee if the Property is refinanced through Northgate, or (iii) if the Debtor refinances with a lender not identified by Northgate, or sells the Property in a Court-approved sale, Northgate shall be paid a minimum $10,000 fee.

(B.R. 884, *see also* B.R. 894.) On March 5, 2025, the Bankruptcy Court authorized Debtor to retain and employ Northgate (the "Retention Order") according to the Retention Application and the Retention Agreement. (B.R. 925–27.) The Bankruptcy Court also stated, however, that "Northgate shall seek compensation for its services and reimbursement of its expenses upon application to the Court, and upon notice and a hearing, pursuant to 11 U.S.C. §§ 330 and 331." (B.R. 926.)

Following the Bankruptcy Court's March 5 order, Northgate marketed the Property for sale and refinance. (B.R. 1960–61.) On April 22, Debtor filed a motion with the Bankruptcy Court, identifying three potential lenders to refinance the Property. (B.R. 2332.) Northgate had introduced one of the potential lenders to the Debtor. (*Id.*) But ultimately, that lender did not reach a refinancing agreement with Debtor. (B.R. 2332, 2668–69.) Debtor, however, was able to close on a refinancing loan with Kenden LLC on April 29, 2025. (Appellant's Br., Dkt. 9, at 8; B.R. 2669.) It is undisputed that Northgate did not procure Kenden LLC's loan or otherwise

introduce this lender to Debtor.[3] (*See* Appellant's Br., Dkt. 9, at 8; Appellee's Br., Dkt. 14, at 6–7.) On April 29, 2025, the Bankruptcy Court authorized the refinancing loan with Kenden LLC. (B.R. 1725–27.)

## II. The Fee Order

On August 12, 2025, Northgate filed its first application for compensation (the "Fee Application") with the Bankruptcy Court. (B.R. 1959–62.) Northgate claimed that "Debtor [was] obligated to pay Northgate its broker's commission of 3% of the amount of the refinancing loan, or $66,000." (B.R. 1962.) On December 2, 2025, Northgate's counsel advised the Bankruptcy Court that, following discussions with the Office of the United States Trustee, Northgate agreed to reduce the compensation sought to $10,000. (B.R. 2329.)

On December 6, 2025, Francis filed an objection to Northgate's Fee Application. (B.R. 2330–40.) Francis argued, *inter alia*, that Debtor closed the refinancing transaction independently of Northgate. (B.R. 2331.) Francis added that fees had already been paid to another broker who facilitated that transaction. (B.R. 2334.) Francis also argued that, while Northgate had identified a potential lender, Debtor and that lender did not come to a deal. (B.R. 2332.) Thus, Francis argued, "[n]o compensation may be awarded under 11 U.S.C. § 330" because "Northgate's Fee Application fail[ed] to identify the successful refinancing lender and fail[ed] to show that Northgate was the procuring cause of the transaction that preserved the estate's value." (B.R. 2334–35.)

[3] Northgate argued in the Bankruptcy Court that "Debtor leveraged the work of Northgate to proceed with a refinancing with Kenden LLC" and that "[o]nly after Northgate's marketing campaign and ongoing discussions with the lenders procured by Northgate did the Debtor decide to proceed with Kenden [LLC]." (B.R. 2418–2419.) However, Northgate concedes that it did not procure the Kenden LLC loan or introduce the lender to Debtor. (*See* Appellee's Br., Dkt. 14, at 6–7.)

On December 8, 2025, Northgate filed a reply to Francis' objection. (B.R. 2408–15.) Northgate argued that, pursuant to the Retention Agreement and the Retention Order, it had "negotiated with multiple potential lenders on the Debtor's behalf" and "procured the Debtor four term sheets from four different potential lenders." (B.R. 2408–09.) In addition, Northgate provided the Bankruptcy Court with a marketing report detailing the various services it had provided to Debtor. (*See* B.R. 2481–518.) But, Northgate argued, "in violation of the terms of the Retention Agreement, the Debtor proceeded with a different lender and paid a different broker, and now seeks to deny Northgate the right to collect any compensation." (B.R. 2409; *see also* B.R. 2410 (arguing that "[t]he Retention Agreement grants Northgate the ***exclusive*** right to arrange for a refinancing of the Property").) Moreover, Northgate argued that Francis had repeatedly praised Northgate for their work, and that, on several occasions, Francis had "created unnecessary obstacles to Northgate's ability to provide the services it was retained to provide." (B.R 2413–14.) Northgate concluded that,

> in light of the extensive work that Northgate has performed in this matter, the multiple lenders and refinancing offers obtained by Northgate for the Debtor, the Debtor's decision to violate the terms of the Retention Agreement and deprive Northgate of the benefits of the Retention Agreement, and the Debtor's own roadblocks that it put up to hinder Northgate's ability to perform its work, Northgate is entitled to the modest, reduced fee of $10,000 that it seeks to be compensated.

(B.R. 2414.)

On December 11, 2025, the Bankruptcy Court held a hearing on the Fee Application. (B.R. 2579–93.) During the hearing, Bankruptcy Court Judge Nancy Hershey Lord referenced the Retention Order, explaining that the Order provided for a $10,000 payment to Northgate if Debtor closed a transaction that "negate[d] the need for further services to be rendered by Northgate." (*See* B.R. 2586 (quoting B.R. 894 (Retention Agreement)); *see also* B.R. 925–27 (Retention Order

authorizing Debtor to retain Northgate pursuant to the terms set forth in the Retention Agreement).) Judge Lord further noted that Northgate's compensation in these circumstances was "specifically negotiated" and had been approved by the Bankruptcy Court's Retention Order. (B.R. 2588.)[4] Judge Lord stated that, in response to Francis' argument that Northgate "provided no actual and necessary benefit" because it did not close Debtor's refinancing agreement, Northgate "filed an extensive reply . . . as to all of the things that it did do." (B.R. 2587.) Earlier in the hearing, Judge Lord also noted that "[Northgate] did a lot of work here." (B.R. 2584.) Judge Lord then approved the Fee Order on the record. (B. R. 2590.) On December 22, 2025, the Bankruptcy Court issued an order granting Northgate's Fee Application in the amount of $10,000. (B.R. 2524–25.) The order directed "[t]he Debtor . . . to pay Northgate . . . within seven [] business days." (B.R. 2525.)

Francis timely appealed the Bankruptcy Court's Fee Order. (Notice of Appeal, Dkt. 1.) On February 25, 2026, Francis also filed a motion to stay the Fee Order pending this appeal. (Mot. Stay Pending Appeal, Dkt. 8.)

## DISCUSSION

### I. Appellant Lacks Standing to Appeal the Fee Order

To have standing to appeal from a bankruptcy court ruling, the Second Circuit has required that an appellant be a "person aggrieved." *In re 22 Fiske Place, LLC*, Nos. 22-1788, 22-1793, 2023 WL 4278189, at *3 (2d Cir. June 30, 2023) (summary order) (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988)). An aggrieved person is a person "'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88–89 (2d Cir. 2011) (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic*

[4] Shortly thereafter, Judge Lord emphasized that, "I approved a [R]etention [O]rder; it's a final order. It has a paragraph in it that I believe deals exactly with this situation, and it says that [Northgate] . . . can seek $10,000." (B.R. 2590.)

*Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)). "This requirement is more exacting than injury-in-fact under Article III because courts have recognized the need to limit appellate standing for bankruptcy litigation to prevent potentially endless appeals brought by parties indirectly affected by every bankruptcy order." *In re 22 Fiske Place, LLC*, 2023 WL 4278189, at *3 (citing *Kane*, 843 F.2d at 642). "To qualify as an aggrieved person, therefore, [Appellant] must show that the [bankruptcy] court's interim fee order directly harmed [her] financial interests." *Id.* Francis cannot make that showing here.

Francis fails to identify any way in which her pecuniary interests have been directly and adversely affected by the challenged order. The fee award was not entered against her. It was entered against Debtor Etienne Estates at Washington LLC. (B.R. 2525.) New York law[5] makes plain that Francis' status as a member of Etienne Estates at Washington LLC does not confer upon her a cognizable interest in Debtor's property. *In re 22 Fiske Place, LLC*, 2023 WL 4278189, at *3 ("Under New York law, members of an LLC do not have an interest in an LLC's property." (citing N.Y. Ltd. Liab. Co. Law § 601)). Moreover, under New York law, an individual does not have standing to sue for the harm to any limited liability company of which they are a member. *In re 22 Fiske Place, LLC*, No. 21-CV-8087 (KPF), 2022 WL 2819093, at *9 (S.D.N.Y. July 18, 2022) (citing *Brach v. Levine*, 957 N.Y.S.2d 263, at *6 (Kings Cnty. Sup. Ct. 2012) (table)), *aff'd*, 2023 WL 4278189; *see also New Castle Siding Co. v. Wolfson*, 468 N.Y.S.2d 20, 21 (2d Dep't 1983) ("The fact that an individual closely affiliated with a corporation . . . is incidentally injured

[5] The Court applies New York law because "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *AmeriCredit Fin. Servs., Inc. v. Tompkins*, 604 F.3d 753, 757 (2d Cir. 2010) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979), *superseded in part by statute*, Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106, *as recognized in In re Minkina*, 79 F.4th 142, 148 (1st Cir. 2023)).

by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation."), *aff'd*, 63 N.Y.2d 782 (1984). Thus, because Francis has no cognizable interest in Debtor's property, she lacks standing to appeal the Bankruptcy Court's Fee Order, which was entered only against Etienne Estates at Washington LLC. *See In re 22 Fiske Place, LLC*, 2022 WL 2819093, at *9 ("It follows logically that Appellant cannot claim standing to appeal Bankruptcy Court orders that affect property to which he has no legally cognizable interest." (citations omitted)).

That Francis is the sole and managing member of Debtor does not alter this conclusion. *See Wilkinson v. Historic Pastures Homeowners Ass'n, Inc.*, No. 23-CV-1035 (DNH), 2024 WL 1142137, at *2 (N.D.N.Y. 2024) (citing *In re 22 Fiske Place, LLC*, 2023 WL 4278189, at *3). In *In re 22 Fiske Place, LLC*, the Second Circuit ruled that the sole member of a debtor-LLC did not have standing to appeal a bankruptcy court fee order entered against the debtor. 2023 WL 4278189, at *3; *see also Wilkinson*, 2024 WL 1142137, at *2 (same). Ultimately, just as the Second Circuit held in *In re 22 Fiske Place, LLC*, "the money awarded to pay [Northgate's] . . . fees is withdrawn from Debtor's Estate, not [the sole member's] own pocket." *See* 2023 WL 4278189, at *3.

Thus, because Francis cannot show that the Bankruptcy Court's Fee Order harmed her financial interests in any way, she cannot meet the "person aggrieved" standard and lacks standing to appeal that Order. This appeal must therefore be dismissed.

## II. The Bankruptcy Court Did Not Abuse Its Discretion in Approving Northgate's Fee Application

Even if Francis had standing, her appeal would be denied on the merits—the Bankruptcy Court did not abuse its discretion in approving Northgate's Fee Application. *See Wilkinson*, 2024 WL 1142137, at *3 ("[E]ven putting aside the standing problem . . . , a review of the briefing in

light of the underlying order compels the conclusion that the bankruptcy court reached perfectly reasonable, legally supportable conclusions in the matters below.").

Title 11, United States Code, § 327(a) authorizes bankruptcy trustees, with court approval, to "employ one or more . . . professional persons . . . to represent or assist the trustee in carrying out the trustee's duties." Title 11, United States Code, § 330(a) ("Section 330") authorizes bankruptcy courts to award the retained professionals "reasonable compensation" based on consideration of "the nature, the extent, and the value of such services, taking into account all relevant factors."[6] Under Section 330(a)(3), to determine the amount of compensation to be awarded, the relevant factors for a bankruptcy court to consider are:

---

[6] The parties presume that Section 330 governs Northgate's compensation. (Appellant's Br., Dkt. 9, at 12; Appellee's Br., Dkt. 14, at 12.) However, the Bankruptcy Court's Retention Order is more properly construed as invoking 11 U.S.C. § 328 ("Section 328"). Whereas Section 330 authorizes bankruptcy courts to award reasonable compensation *ex post*, under Section 328, a bankruptcy court may determine a service provider's "reasonable terms and conditions of employment" *ex ante*, at the time employment is approved. 11 U.S.C. § 328(a); *see also Liani v. Baker*, Nos. 09-CV-2651, 09-CV-2652 (ILG), 2010 WL 2653392, at *7–8 (E.D.N.Y. June 28, 2010) (drawing this distinction).

The "pre-approval of a fee agreement under [Section] 328(a) depends on the totality of the circumstances, including whether the professional's application, or the court's order, referenced [S]ection 328(a), and whether the court evaluated the propriety of the arrangement before granting final, and not merely preliminary, approval." *Liani*, 2010 WL 2653392, at *9 (quoting *In re Smart World Techs., LLC*, 552 F.3d 228, 233 (2d Cir. 2009)). Here, the Bankruptcy Court's Retention Order qualifies as a pre-approval order under Section 328. The order authorized Debtor "to employ and retain Northgate as its real estate advisor on the terms set forth in the [Retention] Application, . . . and the Retention Agreement." (B.R. 926.) Although the Retention Order specifies that Northgate is to apply to the Court for compensation under Section 330, (*id.*), the terms of Northgate's employment, as stipulated to in the Retention Application and the Retention Agreement, contemplate the payment of commissions on a percentage fee basis. That compensation structure is more consistent with an *ex ante* Section 328 approval order than an *ex post* compensation order under Section 330. *See Liani*, 2010 WL 2653392, at *9 ("The only source of authority for the court's approval of commission payments is [Section] 328, which allows for 'any reasonable terms and conditions,' including employment on 'a percentage fee basis.' For this reason, the Court interprets the Retention Order as pre-approval under [Section] 328." (quoting 11 U.S.C. § 328(a)). Ultimately, however, whether Section 328 or Section 330 governs is a

> (1) "the time spent on such services;" (2) the rates charged; (3) "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case;" (4) "whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;" (5) "whether the person is board certified or has demonstrated skill and experience in the bankruptcy field;" and (6) "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

*Fetman v. Musso*, 20-CV-1600 (MKB), 2021 WL 736445, at *4 (E.D.N.Y. Feb. 25, 2021) (quoting 11 U.S.C. § 330(a)(3)(A)–(F)). "The decision to award fees, and the amount of fees to grant, is within the sound discretion of the bankruptcy judge." *Id.* (quoting *Fletcher v. Davis*, 536 B.R. 551, 565 (S.D.N.Y. 2015)). "The inquiry on appeal of a bankruptcy court's order awarding fees is focused on whether there is a reasonable basis in the record to support the propriety of the bankruptcy judge's decision, not on whether the appellate court might have ruled differently if presented with the same evidence." *Id.* (internal quotation marks omitted) (quoting *Bernheim v. Damon & Morey, LLP*, Nos. 06-3386-BK, 06-3389-BK, 2007 WL 1858292, at *1 (2d Cir. June 28, 2007) (summary order)).

Here, the Bankruptcy Court did not abuse its discretion by awarding Northgate $10,000 in professional fees. First, the Bankruptcy Court was not working from a "blank slate" when it considered Northgate's Fee Application. *See In re Byrne*, 22-CV-8762 (VB), 2023 WL 5425623, at *6 (S.D.N.Y. Aug. 23, 2023) (noting that the bankruptcy court's familiarity with the circumstances and with similar proceedings entitled it to "substantial deference" with respect to fee determinations under Section 330(a)(3)). Prior to ruling on Northgate's Fee Application, the Bankruptcy Court had presided over Debtor's case for more than a year. *See Bernheim*, 2007 WL

---

distinction without a difference in this case. Even if Section 330 applies, the Bankruptcy Court did not abuse its discretion in approving Northgate's Fee Application.

1858292, at *2 (deferring to bankruptcy judge's determination of fees when the bankruptcy judge "presided over th[e] bankruptcy for its duration and had the opportunity to evaluate first-hand both the quality of [the appellee's] performance and the contributions made by the firm"). Moreover, in evaluating Debtor's Retention Application, the Bankruptcy Court considered Northgate's expertise in bankruptcy real estate brokerage and the compensation scheme that the parties had agreed upon. (*See* B.R. 888–89 (Declaration of Greg Corbin, President of Northgate, discussing Northgate's expertise in bankruptcy brokerage); B.R. 884 (Retention Application explaining that Northgate's compensation was "negotiated in good faith and at arms-length with the Debtor's counsel . . . and reflect the Debtor's evaluation of the value and expertise of the work to be performed by Northgate"); B.R. 880 (Retention Order granting Northgate's requested fees and noting that "the Court [is] satisfied based on the representations made in the [Fee] Application").) Thus, when the Bankruptcy Court considered Northgate's subsequent Fee Application, it had already considered some of the relevant Section 330(a)(3) factors—namely, whether Northgate "ha[d] demonstrated . . . experience in the bankruptcy field," as well as the rates charged by Northgate. 11 U.S.C. §§ 330(a)(3)(B), (E).

Second, the Court held a hearing on December 11, 2025, on Northgate's Fee Application, and heard argument from Francis, Northgate, the U.S. Trustee, and Debtor. (B.R. 2579–93.) In the hearing, as per Section 330(a)(3)(B), Judge Lord considered the rates charged by Northgate and referenced the terms of the Retention Agreement that provide for Northgate to receive a $10,000 payment if Debtor closed a refinancing deal independently. (B.R. 2586.) The record also shows that, as per Section 330(a)(3)(C), Judge Lord considered the reasonableness of Northgate's fees in light of the benefits it had provided Debtor and its Chapter 11 case, noting that "[Northgate] did a lot of work," (B.R. 2594). And, in response to Francis' argument that Northgate had

"provided no actual and necessary benefit" because it did not close Debtor's refinancing agreement, Judge Lord stated that Northgate "filed an extensive reply . . . as to all of the things that it did do." (B.R. 2587.) Indeed, in both its Fee Application and its reply to Francis' objection, Northgate included a detailed list of the services it had provided Debtor. (*See* B.R. 1960–61, 2481–518.) Ahead of the hearing, Northgate also provided the Bankruptcy Court with the term sheets it had negotiated on Debtor's behalf. (*See* Appellee's Br., Dkt. 14-1, at ECF[7] 208–259.)[8] Thus, the record indicates that the Bankruptcy Court gave due consideration to the fees that Northgate was entitled to under the Retention Order and the Retention Agreement in light of the relevant Section 330 factors. *See Fetman*, 2021 WL 736445, at *4 (finding no abuse of discretion where bankruptcy court considered skill and experience of a professional and his time spent on the services); *Ford v. Philpot*, No. 05-CV-1091 (JCH), 2005 WL 8179669, at *3 (D. Conn. Nov. 21, 2005) (finding no abuse of discretion when the bankruptcy court's decision "indicates that [it] evaluated [the fee applicant's] contractual fee in light of the [S]ection 330(a)(3) factors and also reviewing [the fee applicant's] submission of time sheets and a list of his activities");[9] *In re Tribeca Mkt., LLC*, 516 B.R. 254, 273 (S.D.N.Y. 2014) (noting that the Section 330(a)(3) factors are "non-exhaustive").

Francis argues that, because Northgate did not close a refinancing deal, it did not confer a benefit on the estate and, therefore, its services were not "necessary" under Section 330. (*See*

---

[7] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[8] The term sheets seem to be included in the B.R. at 2422–77. However, that portion of the record is illegible. The Court instead refers to the appendix to Appellee's brief, which contains the same term sheets.

[9] In the present case, the Bankruptcy Court did not review time sheets in assessing Northgate's Fee Application. However, Northgate and the Debtor expressly stated that Northgate would not provide time sheets in the Retention Agreement, (B.R. 895), which the Bankruptcy Court incorporated in its Retention Order, (B.R. 925–27).

Appellant's Br., Dkt. 9, at 8, 12–13.) That argument, however, is unavailing for several reasons. First, "[i]n order to determine whether the services were 'necessary,' courts objectively evaluate whether the services provided were reasonably likely to benefit the estate under the circumstances at the time that the services were rendered." *In re Siskin*, No. 11-CV-9468 (NRB), 2012 WL 2367043, at *6 (S.D.N.Y. June 20, 2012) (citing *In re Kohl*, 421 B.R. 115, 128–29 (Bankr. S.D.N.Y. 2009) ("Courts should not use the benefit of hindsight to determine whether the work of a [professional service provider] was necessary" but rather "must determine whether the work was reasonable at the time it was performed.")). Here, as Judge Lord pointed out during the Fee Application hearing, "[Northgate] did a lot of work." (B.R. 2584.) Northgate marketed the Property, liaised with Debtor, and procured several term sheets on Debtor's behalf. (B.R. 2408–09, 2480–518.) Francis herself previously acknowledged that Northgate's services were beneficial to Debtor at the time they were rendered.[10] That Debtor secured a refinancing deal on its own does not void the benefits Northgate provided. Second, under the Retention Agreement and Retention Order, Debtor agreed to pay Northgate "a minimum of $10,000" if Debtor "refinances with a lender not identified by Northgate, or sells the Property in a [c]ourt-approved sale[.]" (B.R. 884, 894.) This language suggests that, at the time they were rendered, Northgate's services were reasonably likely to confer a benefit onto Debtor even if Northgate did not close a refinancing deal. As Judge Lord noted during the Fee Application hearing, Northgate's compensation in the event that Debtor closed a transaction that "negate[d] the need for further services to be rendered by Northgate," (B.R. 2586), was "specifically negotiated," (B.R. 2588). This further suggests that Debtor, of which Francis is the sole and managing member, (B.R. 25), contemplated that

[10] Northgate's reply to Francis' objection to the Fee Application states that Francis called a Northgate employee "a star" and that Francis called the terms of a prospective refinancing agreement secured by Northgate "very good." (B.R. 2413 (citation omitted).)

Northgate's services would be beneficial regardless of whether Northgate ultimately closed a refinancing transaction.

In sum, the Bankruptcy Court did not abuse its discretion in approving Northgate's Fee Application.

**CONCLUSION**

For the forgoing reasons, the Court dismisses this appeal. The Court also denies Appellant's motion to stay the Bankruptcy Court's Fee Order as moot. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 28, 2026
Brooklyn, New York